UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PORTFOLIO ONE, LLC, et al., | Hon. Joseph H. Rodriguez |
| Plaintiffs, | Civil Action No. 17-579 |
| v. | OPINION |
| GINA M. JOIE, et al., | |
| Defendants. | |

This matter is before the Court on cross-motions for summary judgment on the issue of whether the parties should be compelled to arbitrate their case of nursing home neglect. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court denies Defendants' motion for summary judgment and grants Plaintiffs' cross-motion for summary judgment.

Background

Plaintiffs Portfolio One, LLC d/b/a ManorCare Health Services-Washington Township, HCR ManorCare, Inc., and ManorCare Health Services, LLC filed a Complaint before this Court to compel arbitration of a dispute with Defendants Gina M. Joie and Danielle N. Griffith, executors of the estate of their father, John T. Bombara, who had been a patient in Plaintiffs' facility when he passed away on July 7, 2014.

1

On February 24, 2013, Defendant Danielle N. Griffith signed a document titled Voluntary Arbitration Agreement ("Agreement") on behalf of decedent John T. Bombara with respect to decedent's admission to the Plaintiffs' licensed skilled-nursing facility. At that time, Griffith held a General Durable Power of Attorney executed by her father in 2011, authorizing her to "defend, settle, adjust, compound, submit to arbitration and compromise all actions, suits, accounts, reckonings, claims and demands whatsoever that are now, or hereafter shall be, pending between [her father] and any person, firm, association or corporation, in such manner and in all respects as [Griffith] shall think fit[.]"

The top of the first page of the Agreement stated, in bold, capitalized lettering:

> **THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN THEM. PLEASE READ CAREFULLY BEFORE SIGNING. THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED. ARBITRATION IS DESCRIBED IN THE VOLUNTARY ARBITRATION PROGRAM BROCHURE COPY, ATTACHED AND MADE PART OF THIS AGREEMENT.**

Paragraph 1 of the Agreement provides, in relevant part:

> **1. Agreement to Arbitrate "Disputes":** All claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center, or any sister Center operated by any subsidiary of HCR

ManorCare, Inc. ("Sister Center"), including claims for malpractice, shall be submitted to arbitration.

Paragraph 3 of the Agreement states, in relevant part, that the "Parties agree and intend that this Agreement, the Admission Agreement, and the Patient's stays at the Center substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") and applicable federal case law apply to this Agreement, [and] preempt any inconsistent State law[.]" Paragraph 5 of the Agreement states:

> **5. Sole Decision Maker:** Except as otherwise provided in 6 below, the [Arbitration] Panel is empowered to, and shall, resolve all disputes, including without limitation, any disputes about the making, validity, enforceability, scope, interpretation, voidability, unconscionability, preemption, severability, and/or waiver of this Agreement or the Admission Agreement, as well as resolve the Parties' underlying disputes, as it is the Parties' intent to avoid involving the court system.

Paragraph 8 of the Agreement allows the signatory to cancel the Agreement within thirty (30) days of signing by sending written notice via certified mail. Paragraph 8 also states "[i]f not cancelled, this Agreement shall be binding on the Patient for this and all of Patient's subsequent admissions to the Center or any Sister Center without any need for further renewal."

Immediately preceding the signature block of the Agreement, the following text appears:

> **THE PARTIES CONFIRM THAT EACH OF THEM UNDERSTANDS THAT EACH HAS WAIVED THE**

**RIGHT TO A TRIAL BEFORE A JUDGE OR JURY AND THAT EACH CONSENTS TO ALL OF THE TERMS OF THIS VOLUNTARY AGREEMENT. PATIENT ACKNOWLEDGES THE RIGHT TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OR FAMILY BEFORE SIGNING.**

Beneath that text, Plaintiff, Danielle N. Griffith, signed her name in the space designated for the "Patient's Legal Representative[.]"

Defendants initiated a State court action on or about October 5, 2015 by filing a Complaint in a case captioned *Gina M. Joie and Danielle N. Griffith, General Executors and Executors Ad Prosequendum of the Estate of John T. Bombara v. ManorCare Health Services-Washington Township, HCR ManorCare, Inc., ManorCare Health Services, Portfolio One, LLC, and Anthony Stinson, Administrator* in the Superior Court of New Jersey, Law Division, Gloucester County, Docket No.: GLO-L-1375-15 ("State court action"). Defendants subsequently filed an Amended Complaint in the State court action on April 29, 2016.

On January 27, 2017, Plaintiffs filed the Complaint in this Court to compel arbitration of the dispute. On September 21, 2017, the Court granted limited discovery on the issue of arbitrability. Subsequent to such discovery, the parties filed cross-motions for summary judgment that are presently before the Court.

## Applicable Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party

cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); *accord* Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

A mandatory arbitration provision in a nursing home or assisted living facility agreement is generally enforceable. *See Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530, 532-33 (2012). Because nursing home agreements involve interstate commerce, arbitration provisions contained therein are governed by the Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"); thus, the FAA preempts the anti-arbitration provision contained in N.J. Stat. Ann. § 30:13-8.1. *Estate of Ruszala v. Brookdale Living Communities, Inc.,* 1 A.3d 806, 817-18 (N.J. Super. Ct. App. Div. 2010).

Before compelling arbitration, however, courts must be satisfied that the parties have an agreement to arbitrate, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted). The Court must decide, first, whether "there is an agreement to arbitrate" and, second, whether "the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, & 950646*, 584 F.3d 513, 523 (3d Cir. 2009). When the parties have a valid arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted).

General State law principles are utilized to determine whether the parties have agreed to arbitrate. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). Here, the parties acknowledge that New Jersey law determines whether there was an agreement to arbitrate. Under New Jersey contract principles, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016). "[A]ny contractual waiver-of-rights provision must reflect that the party has agreed clearly and unambiguously

to its terms." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 313 (N.J. 2014) (internal quotation and citation omitted). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." *Atalese*, 99 A.3d at 314. "Whatever words compose an arbitration agreement, they must be clear and unambiguous that a [party] is choosing to arbitrate disputes rather than have them resolved in a court of law. In this way, the agreement will assure reasonable notice to the [party]." *Id.* at 316. "The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Id.* at 314 (citation omitted). "[A]n arbitration agreement is clearly enforceable when its terms affirmatively state, or unambiguously convey to a consumer in a way that he or she would understand, that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum." *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, --- A.3d ---, 2019 WL 166309, at *11 (N.J. Jan. 10, 2019) (*citing Atalese*, 99 A.3d at 313).

The FAA requires that courts place arbitration agreements "on equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. ---, 137 S. Ct. 1421, 1424 (2017). "When a party enters into a signed, written contract, that party is presumed to understand and assent

9

to its terms, unless fraudulent conduct is suspected." *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690 (N.J. 2010). "Failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading." *Gras v. Assocs. First Capital Corp.*, 786 A.2d 886, 894 (N.J. Super. Ct. App. Div. 2001) (citation omitted); *see also Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 84 (N.J. 1960) (describing same as a "general principle" of contract law).

Here, Defendants assert that the Voluntary Arbitration Program Brochure referenced in the February 24, 2013 Agreement signed by Griffith was not produced until December 21, 2016, after the State court action was filed and outside of the statute of limitations for the State court action. Further, Defendants take issue with the fact that Mr. Bombara is not referenced in the document Griffith signed. Finally, Defendants contend that the document signed by Griffith on February 24, 2013 was in reference to Bombara's January 28, 2013 admission and did not pertain to his May 29, 2014 admission that is the subject of the dispute between the parties. Defendants argue that this combination of circumstances indicates that the parties did not come to a meeting of the minds to support the formation of a contract to arbitrate.

The Court finds that the Agreement signed by Ms. Griffith contains "plain language that would be clear and understandable to the average consumer that she is waiving . . . rights . . . to sue or go to court to secure relief . . . giving up her right to bring her claims in court or have a jury resolve the dispute." *Atalese*, 99 A.3d at 315-16. Further, the claims in dispute fall within the scope of the Agreement because the Agreement requires the parties to arbitrate "any dispute." *Alamo Rent A Car, Inc. v. Galarza*, 703 A.2d 961, 966 (N.J. Super. Ct. App. Div. 1997) ("The 'any dispute' language is the very least . . . need[ed] . . . to guarantee arbitration of all disputes."). *Accord Martindale v. Sandvik, Inc.*, 800 A.2d 872, 883-84 (N.J. 2002).

Regarding the Arbitration Program brochure, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Weichert Co. Realtors v. Ryan,* 608 A.2d 280, 284 (N.J. 1992). The essential terms of the agreement to arbitrate were contained in the Agreement signed by Griffith on February 24, 2013; the brochure was a supplement that did not differ from or contradict the terms in the Agreement.

Finally, any reference Defendants have made to the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2.22, is misplaced because that

statute is inapplicable to skilled nursing facilities under the "learned professionals" exception. *See Manahawkin Convalescent v. O'Neill*, 43 A.3d 1197, 1203 (N.J. Super. Ct. App. Div. 2012).

## Conclusion

For these reasons, Plaintiffs' motion for summary judgment to compel arbitration will be granted; Defendants' motion will be denied. An Order consistent with this Opinion follows.

Dated: January 23, 2019

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
UNITED STATES DISTRICT JUDGE